United States District Court

for the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DAN L. WHITNEY, JANET R. HADLEY,
MARGARET A. KORNOW-BROWN and ERIC
BRELLE,

              Plaintiffs,

   v.

CHARLES WURTZ, VERISCAPE, INC.,
RENEE TADLOCK, REGINA RYGELIS, WILL
ARNTZ, SAM JACOBS, GARY BERKOWITZ
and BRIAN ROE,

              Defendants.
_____/

AND RELATED CROSS-CLAIMS
_____/

No. C-04-05232  PVT

**ORDER GRANTING PLAINTIFFS'
MOTION TO COMPEL FURTHER
PRODUCTION OF DOCUMENTS;
ORDER GRANTING IN PART AND
DENYING IN PART FURTHER
INTERROGATORY RESPONSES;
ORDER DENYING PLAINTIFFS'
MOTION FOR SANCTIONS**

**[Re Docket Nos. 46, 47, 48]**

## INTRODUCTION

    Plaintiffs Dan L. Whitney, Janet R. Hadley, Margaret A. Kornow-Brown and Eric

Brelle (collectively "Plaintiffs") move to compel initial disclosures from defendants Charles

Wurtz, Renee Tadlock, Veriscape, Inc., Regina Rygelis and Brian Roe.  Additionally,

Plaintiffs move to compel further production of documents and further interrogatory

responses from defendant Veriscape, Inc.  ("Veriscape").  Defendant Veriscape opposes the

motions for further production of documents and further interrogatory responses.  On

1  February 28, 2006, the parties appeared for hearing.  Having reviewed the papers and

2  considered the arguments of counsel and for the reasons set forth below, the court grants

3  Plaintiffs' motion to compel further production of documents and grants in part and denies in

4  part Plaintiffs' motion to compel further interrogatory responses and denies Plaintiffs' motion

5  for sanctions.[1]  Plaintiffs' motion to compel initial disclosures is moot.

6                                    **BACKGROUND**

7         Veriscape, Inc. ("Veriscape") is a high technology start-up company that markets its

8  Intellicat software product to larger companies seeking to improve their various electronic

9  procurement functions.  Intellicat is designed as an add-on software product that Veriscape

10  customizes to accommodate pre-existing software platforms.  Generally, the technical

11  configuration process may require one to six months for complete installation and integration

12  of the Intellicat software product.

13         On February 1, 2002, Plaintiffs entered into their respective employment agreements

14  with Veriscape.  Defendant Charles Wurtz ("Wurtz"), Chairman and Chief Executive Officer

15  of Veriscape from May 1999 to June 2004, negotiated and executed the individual

16  employment agreements on behalf of Veriscape with each plaintiff.  Pursuant to an

17  employment agreement dated February 1, 2002, Veriscape employed plaintiff Dan L.

18  Whitney ("Whitney") as a corporate sales officer.  ("Whitney Employment Agreement").

19  Plaintiffs allege that Veriscape employed Whitney from June 1, 2001 until June 18, 2004.

20  Whitney alleges that he facilitated sales of the Intellicat product to customers, including the

21  Bank of Montreal, Pfizer and Unilever.  As a result, Whitney alleges he was entitled to

22  certain sales commissions.  Whitney further alleges that he sought to enforce payment of his

23  salary and sales commissions and was terminated on June 18, 2004.  Without providing any

24  specific reasons, Veriscape informed Whitney that there were "solid grounds" for his

25  termination.  Whitney alleges that at the time he was undertaking an effort to facilitate sales

26  of Intellicat to Ariba and/or ePlus, his employment was abruptly terminated.  During his term

27

28  _____
         [1]     The holding of this court is limited to the facts and the particular circumstances underlying the present
motion.

2

**United States District Court**

**For the Northern District of California**

1  of employment, Whitney alleges he was never compensated in salary, commissions or stock

2  options.  To date, Whitney alleges Veriscape has failed to provide him *any* compensation

3  whatsoever.

4       Whitney had broken his neck in the past.  As a result, Whitney suffers from severe

5  physical disabilities that limit his mobility and restrict use of his right hand.  Upon hiring

6  Whitney, Veriscape allegedly promised to provide him with an assistant and health insurance

7  coverage.  Whitney alleges that Veriscape failed to pay his assistant and never provided him

8  with health insurance coverage.  Additionally, Veriscape made certain demands on Whitney

9  to travel, to attend meetings and to produce last-minute reports which strained, and perhaps

10  exacerbated, some of his physical disabilities.

11       Pursuant to an employment agreement dated February 1, 2002, Veriscape employed

12  plaintiff Janet R. Hadley ("Hadley") as a sales associate and senior content specialist.

13  ("Hadley Employment Agreement").  Plaintiffs allege that Veriscape employed Hadley from

14  February 1, 2002 until September 22, 2004 and that defendants constructively terminated her

15  by, *inter alia,* failing to provide her with any compensation.  On September 22, 2004, Hadley

16  resigned from the company.

17       Pursuant to an employment agreement dated February 1, 2002, Veriscape employed

18  Margaret A. Kornow-Brown ("Kornow-Brown") as the director of product marketing and

19  strategic sales relationships.  ("Kornow-Brown Employment Agreement").  Plaintiffs allege

20  that Veriscape employed Kornow-Brown from February 1, 2002 until June 2003 and that she

21  too, was constructively terminated.  Veriscape failed to compensate Kornow-Brown during

22  the entire term of her employment.  In June 2003, Kornow-Brown resigned from the

23  company.

24       Pursuant to an employment agreement dated February 1, 2002, Veriscape employed

25  plaintiff Eric Brelle ("Brelle") as a west coast sales and technology manager and executive

26  administrator.  ("Brelle Employment Agreement").  Plaintiffs allege that Veriscape employed

27  Brelle from  February 1, 2002 until May 6, 2003.  Plaintiffs allege that Veriscape

28  constructively terminated Brelle and failed to compensate him during the entire term of his

**United States District Court**

For the Northern District of California

1   employment.  On May 6, 2003, Brelle resigned from the company.

2          Plaintiffs allege defendants breached their respective employment agreements by

3   failing to pay them any compensation whatsoever.

4          On April 19, 2005, Plaintiffs filed an amended complaint.  On September 23, 2005,

5   defendants Charles Wurtz, Gary Berkowitz, Regina Rygelis, Brian Roe and Veriscape filed

6   their answer and cross-claims against cross-defendants Janet Hadley, Richard Dodd, United

7   Airlines and Southwest Airlines.  On December 22, 2005, Plaintiffs filed these motions to

8   compel initial disclosures from defendants Charles Wurtz, Renee Tadlock, Regina Rygelis,

9   Gary Berkowitz, Brian Roe and Veriscape, further production of documents and further

10  interrogatory responses from defendant Veriscape.  On  February 8, 2006, defendants Charles

11  Wurtz, Renee Tadlock, Regina Rygelis, Gary Berkowitz, Brian Roe and Veriscape filed their

12  initial disclosures and defendant Veriscape filed its oppositions to the motions to compel

13  further production of documents and further interrogatory responses.  On February 14, 2006,

14  Plaintiffs filed their reply briefs.

<strong>ANALYSIS</strong>

16  **A.      Standard**

17         Under the Federal Rules of Civil Procedure,

18             [p]arties may obtain discovery regarding any matter, not
               privileged, that is relevant to the claim or defense of any party . . .
19             . relevant information need not be admissible at the trial if the
               discovery appears reasonably calculated to lead to the discovery
20             of admissible evidence.

21  Fed. R. Civ. P. 26(b)(1).  As emphasized in the Advisory Committee Notes, the language of

22  Rule 26(b) "make[s] clear the broad scope of examination and that it may cover not only

23  evidence for use at trial but also inquiry into matters in themselves inadmissible as evidence

24  but which will lead to the discovery of evidence."  Fed. R. Civ. P. 26 advisory committee

25  notes on 1946 amendments.

26         A court, however, has discretion to limit discovery if:

27             (i)      the discovery sought is unreasonably cumulative or duplicative, or is
                        obtainable from some other source that is more convenient, less
28                      burdensome, or less expensive;

4

United States District Court

For the Northern District of California

1

2
  (ii)   the party seeking discovery has had ample opportunity by discovery in
         the action to obtain the information sought; or

3
  (iii)  the burden or expense of the proposed discovery outweighs its likely
4 benefit, taking into account the needs of the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the litigation, and the importance of the
proposed discovery in resolving the issues.

5
Fed. R. Civ. P. 26(b)(2).

6

7
### 1.   Initial Disclosures

8
   "A party must, without awaiting a discovery request, provide to other parties . . .

9 [initial disclosures] at or within 14 days after the Rule 26(f) conference unless a different

10 time is set by stipulation or court order, or unless a party objects during a conference that

11 initial disclosures are not appropriate in the circumstances of the action and states the

12 objection in the Rule 26(f) discovery plan."  Fed. R. Civ. P. 26(a).

13
   Although the parties held a conference on April 6, 2005 and filed a report pursuant to

14 Rule 26(f), Plaintiffs allege that defendants Charles Wurtz, Renee Tadlock, Regina Rygelis,

15 Gary Berkowitz, Brian Roe and Veriscape had not yet served their initial disclosures.

16 Indeed, Plaintiffs allege that as a professional courtesy they provided numerous extensions

17 for these defendants to serve their initial disclosures.  Most recently, Plaintiffs had extended

18 the deadline for the above-named defendants to serve their initial disclosures to September

19 23, 2005.  On December 22, 2005, Plaintiffs filed their motion to compel initial disclosures.

20
   On February 8, 2006, defendants Charles Wurtz, Renee Tadlock, Regina Rygelis,

21 Gary Berkowitz, Brian Roe and Veriscape served their initial disclosures (along with

22 Veriscape's oppositions to the other discovery motions discussed herein).[2]  As the above-

23 named defendants have now served their initial disclosures, the court finds Plaintiffs' motion

24

25
   [2]   On its face, it is not immediately obvious that the initial disclosures were served on behalf of defendants
Charles Wurtz, Veriscape, Inc., Regina Rygelis, Gary Berkowitz, Renee Tadlock and Brian Roe.  Although defendants'
26 caption indicates that counsel represents defendants Charles Wurtz, Veriscape, Inc., Regina Rygelis, Gary Berkowitz, Renee
Tadlock and Brian Roe, it was signed on behalf of defendant Veriscape only.  Nonetheless, plaintiffs have acknowledged
27 service of the initial disclosures on behalf of defendants Charles Wurtz, Veriscape, Inc., Regina Rygelis, Gary Berkowitz,
Renee Tadlock and Brian Roe.  Plaintiffs' Reply Regarding Motion to Compel Initial Disclosures ("Reply") at 1.  Instead,
Plaintiffs complain the initial disclosures are "skeletal and inadequate" and insufficiencies may be addressed in further
28 motions.  *Id.*

5

1   to compel initial disclosures is moot.

2              **2.    Document Requests**

3          Plaintiffs initially propounded twenty-one document requests.  On November 17,

4   2005, defendant Veriscape produced documents.  Plaintiffs allege that Veriscape produced

5   documents responsive to only four of their document requests.  The two boxes of documents

6   produced by Veriscape, included various correspondence between Veriscape and each of the

7   plaintiffs.  Apparently the documents produced were responsive to document request nos. 9,

8   10, 11 and 12.  Plaintiffs allege that Veriscape failed to produce any other responsive

9   documents.  Plaintiffs further allege that defendant Veriscape did not serve any written

10  responses to the document requests.  Additionally, Plaintiffs allege that defendant Veriscape

11  never responded to their efforts to negotiate a stipulated protective order.

12         In opposition, defendant Veriscape contends that it has already produced documents

13  responsive to document request nos. 18-21.  Defendant Veriscape produced these documents

14  as part of their initial production of 6,000 documents to plaintiffs.  Defendant Veriscape

15  further contends that there are no documents responsive to document request nos. 13, 14, 16

16  and 17.  Defendant Veriscape contends that it has located documents responsive to document

17  request nos. 5, 8 and 15, which will be produced shortly.  However, defendant Veriscape

18  objects to producing documents responsive to document request nos. 1, 2, 3, 4, 6 and 7 on the

19  grounds that the requests seek confidential business information.  Specifically, defendant

20  Veriscape contends that its contracts and agreements with customers, including Bank of

21  Montreal, Pfizer, Unilever and ePlus, contain certain non-disclosure provisions.

22         Defendant Veriscape contends that a protective order would not adequately protect its

23  confidential business information contained in the documents because plaintiff Whitney has

24  been shown to have engaged in illegal activities in the past.  Defendant Veriscape alleges that

25  plaintiff Whitney improperly recorded and later disclosed a private conversation he had with

26  defendant Wurtz about a potential customer.  During the conversation which occurred in or

27  around June 2004, defendant Veriscape alleges that in a flash of anger and moment of

28  frustration defendant Wurtz physically threatened a potential customer.  Defendant Veriscape

**United States District Court**

For the Northern District of California

**United States District Court**

For the Northern District of California

1  alleges that plaintiff Whitney's improper disclosure of his private conversation with

2  defendant Wurtz to a board member and the actual customer was retaliatory and potentially

3  exposed Veriscape to significant liability.  As a result, defendant Veriscape contends a

4  protective order would do little to ensure its confidential business information remained so.

5       Notwithstanding assurances by defendant Veriscape that it has produced documents

6  responsive to document request nos. 18, 19, 20 and 21, that there are no documents

7  responsive to document request nos. 13, 14, 16 and 17, that documents responsive to

8  document request nos. 5, 8 and 15 will be produced shortly, and that only document request

9  nos. 1, 2, 3, 4, 6 and 7 are at issue, defendant Veriscape still has not served any written

10  responses to the Plaintiffs' document requests.  Defendant Veriscape's responses to specific

11  document requests contained in its opposition are inadequate and do not satisfy the

12  requirements of Rule 34.  Because of defendant Veriscape's failure to serve any written

13  responses, the court reviewed document requests nos. 1-8 and 13-21 as Plaintiffs have

14  requested.

15       The document requests seek documents related to, *inter alia,* Veriscape's contracts and

16  agreements with customers regarding the sale, lease or use of the Intellicat product (i.e.,

17  document request nos. 1, 2, 3 and 4), Veriscape's contracts and/or agreements with each

18  plaintiff (i.e., document request no. 5), Veriscape's financial statements from 2002-2004 (i.e.,

19  document request no. 6), cash payments made by customers to Veriscape from 2002-2004

20  (i.e., document request no. 7), plaintiffs' individual personnel files (i.e., document request no.

21  8), Veriscape's charitable contributions (i.e., document request nos. 13 and 14), Veriscape's

22  bylaws effective from 2002-2004 (i.e., document request no. 15), shareholder meeting

23  minutes from 2002-2004 (i.e., document request no. 16), minutes of board of directors's

24  meetings from 2002-2004 (i.e., document request no. 17), correspondence by and between

25  the board of directors and Veriscape's officers regarding any of the plaintiffs and their

26  compensation (i.e., document request nos. 18 and 19) and correspondence by and between

27  Veriscape's board of directors and officers regarding the sale, use or lease of Intellicat to any

28  customer (i.e., document request nos. 20 and 21).

United States District Court

For the Northern District of California

1    Based on a review of the document requests, the court finds that document requests

2    nos. 1-8 and 13-21 conform to the relevancy requirements of Fed. R. Civ. P. 26.  Agreements

3    and other documents evidencing any customers' purchase, lease or use of the Intellicat

4    software product are relevant to Plaintiffs' claims that they are entitled to certain

5    commissions.  Plaintiffs' contracts, agreements, personnel files and correspondence related to

6    Plaintiffs and their compensation are relevant to Plaintiffs' claims involving their

7    employment relationships.  Financial statements and other documents are relevant to

8    Plaintiffs' claims that defendant Veriscape had cash resources but nevertheless failed to pay

9    their salaries and re-pay plaintiff Whitney's loan to the company.  Minutes from shareholder

10   meetings and board of directors meetings are relevant in determining, *inter alia*, the viability

11   of the company at any given time.  Additionally, it does not appear that the discovery sought

12   is unreasonably cumulative or duplicative, or is obtainable from some other source that is

13   more convenient, less burdensome or less expensive, or that the burden or expense of the

14   proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

15   amount in controversy, the parties' resources and the importance of the proposed discovery in

16   resolving the issues.  *See,* Fed. R. Civ. P. 26(b)(2).

17   Plaintiffs further allege that defendant Veriscape's failure to provide a written

18   response to its document requests and the additional delay in producing responsive

19   documents has resulted in a waiver of any objections to these requests. Rule 34 states in

20   pertinent part that "[t]he party upon whom the request is served shall serve a written response

21   within 30 days after the service of the request, but that a shorter or longer time may be

22   directed by the court, or, in the absence of such an order, agreed in writing by the parties,

23   subject to Rule 29.  The response shall state, with respect to each item or category, that

24   inspection and related activities will be permitted as requested, unless the request is objected

25   to, in which event the reasons for the objection shall be stated." Fed. R. Civ. P. 34(b)

26   (emphasis added).  During a meet and confer between the parties held on August 23, 2005,

27   the parties had agreed to extend the deadline to September 23, 2005 for defendant Veriscape

28   to respond to the document requests.  The record contains no further evidence that any

8

United States District Court

For the Northern District of California

1   further extensions were agreed to by the parties.  No matter whether September 23, 2005 is

2   viewed as the appropriate deadline, defendant Veriscape has failed to respond to the

3   document requests in a timely manner.  Failing to respond to a Rule 34 request within the

4   time permitted waives all objections thereto.  *See, Richmark Corp. v. Timber Falling*

5   *Consultants,* 959 F. 2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to

6   object to discovery requests within the time required constitutes a waiver of any objection.").

7   A court may grant relief from waiver upon a proper showing.  *See, In re Uranium Antitrust*

8   *Litig.,* 480 F. Supp. 1138, 1149 (N.D. Ill. 1979).  By failing to serve any responses to

9   Plaintiffs' document requests, defendant Veriscape has made no showing that would warrant

10  relief from the waiver rule.

11      Defendant Veriscape shall serve a written response to plaintiffs' document request

12  within ten (10) days of the date of this order.  With respect to defendant Veriscape's concerns

13  regarding disclosure of its confidential business information, the parties are ordered to meet

14  and confer on a proposed stipulated protective order and file the proposed order with the

15  court for approval no later than March 21, 2006.[3]  In the event, the parties are unable to agree

16  on a proposed stipulated protective order, the parties may appear before the court to obtain a

17  ruling on a protective order.  Accordingly, Plaintiffs' motion to compel defendant Veriscape

18  to produce documents responsive to document request nos. 1-8 and 13-21 is granted.

19      **3.    Interrogatories**

20      Plaintiffs seek to compel defendant Veriscape to further respond to interrogatories

21  nos. 2, 4, 12 and 13.  Despite the parties' efforts to meet and confer on interrogatories nos. 2

22  and 4, plaintiffs allege that defendant Veriscape continues to object to the information sought

23  by the interrogatories.  Plaintiffs allege that defendant Veriscape had previously agreed to

24

25       [3]    The purpose of a stipulated protective order is to provide special protection to confidential, proprietary or
    private information from public disclosure and from use for any purpose other than the prosecution of the litigation. *See, e.g.,*
26  Stipulated Protective Order at <www.cand.uscourts.gov>.  The stipulated protective order allows for different designations
    of certain confidential, proprietary or private information.  For example, parties may designate extremely sensitive
27  confidential information or items "Highly Confidential-Attorney's Eyes Only."  Alternatively, parties may designate less
    sensitive information and items that still require protection under the standards set forth in Fed. R. Civ. P. 26(c) as
28  "Confidential."

9

1  provide responses to interrogatories nos. 12 and 13 (which plaintiffs later modified) but have

2  not yet responded.

3                    **a.      Interrogatories Nos. 2 and 4**

4         Interrogatories Nos. 2 and 4 are as follows:

5                    Interrogatory No. 2:

6  _____ State the terms of the contract for the sale, use or lease of
                          Intellicat to ePlus.

7  _____            Response to Interrogatory No. 2:

8  _____
9  _____ Defendant objects to this interrogatory on the basis that it
                          is not relevant to this lawsuit in that the only such agreement was
                          signed with ePlus in March 2005, some nine months after
10                        Whitney's employment was terminated, and the terms of the
                          agreement constitute confidential business arrangements,
11                        disclosure of which could, and would significantly effect
                          Veriscape's operations adversely.

12

13  _____Plaintiffs contend that the interrogatory is relevant because plaintiff Whitney has

14  alleged that defendant Veriscape terminated him to avoid paying certain commissions,

15  including on the ePlus account.  Therefore, Plaintiffs contend the information sought by the

16  interrogatory is necessary to determine whether a sale was made and to calculate the amount

17  of commission.

18         Defendant Veriscape objects to interrogatory no. 2 on the grounds that the information

19  sought is not relevant to the claims as asserted in the amended complaint.  First, defendant

20  Veriscape contends that plaintiff Whitney is not entitled to any commissions on the ePlus

21  account because Intellicat was not sold to ePlus.  Rather, the parties entered into a licensing

22  agreement for the Intellicat software product.  Second, the parties executed the licensing

23  agreement nine months after plaintiff Whitney was terminated from Veriscape.  Third,

24  defendant Veriscape contends that the information sought is confidential business

25  information and defendant Veriscape reiterates its concerns whether plaintiff Whitney would

26  abide by a protective order if specific terms of the ePlus licensing agreement were disclosed

27  to him.  Finally, defendant Veriscape contends that the licensing agreement itself contains a

28  non-disclosure provision.

United States District Court

For the Northern District of California

10

**United States District Court**

For the Northern District of California

As plaintiff Whitney's claims relate to his alleged entitlement to certain commissions, including the ePlus account, the information sought is relevant. Although the licensing agreement was executed nine months following plaintiff Whitney's termination, he may have had a role in defendant Veriscape eventually obtaining the licensing agreement with ePlus. Therefore, Plaintiffs' motion to compel a further response to interrogatory no. 2 is granted.

Interrogatory No. 4:

For each employee identified in no. 3, state how much compensation that employee was paid during each year the employee worked at Veriscape.

Response to Interrogatory No. 4:

Defendant objects to providing this information on the grounds that this interrogatory is overly broad and that providing this information would violate the privacy and confidentiality interests of the employee.

Plaintiffs argue that information regarding Veriscape's compensation to other employees in the company is relevant to establish that despite defendant Veriscape's assertions that it had insufficient funds to compensate Plaintiffs, there were sufficient funds to compensate some of the other employees.

Defendant Veriscape objects that the company has never claimed that other employees were never compensated during the time Plaintiffs were employed. Rather, defendant Veriscape states that Plaintiffs were engaged to license the Intellicat software product in California. From the beginning of Plaintiffs' employment with the company, Veriscape states it informed Plaintiffs they would be paid only if sufficient licensing fees were paid by customers for their commissions. Defendant Veriscape states that Plaintiffs did not execute any licensing agreements for the Intellicat software product in California and therefore, Plaintiffs were not entitled to any commisions and the salaries of other employees is irrelevant. Defendant Veriscape further objects because the salaries of other employees is confidential business information. Moreover, each employment agreement contains non-disclosure provisions.

Since the issue of whether defendant Veriscape was able to compensate Plaintiffs

11

relates to certain claims in the amended complaint, the interrogatory is relevant.  Defendant

Veriscape shall provide the salaries of its other employees without revealing the identities of

the individual employees.  For example, defendant Veriscape may identify the employees as

numbered 1 through 10 and set forth the respective salaries for each employee.  Therefore,

Plaintiffs' motion to compel a further response to interrogatory no. 4 is granted.

### b.      Interrogatories No. 12 and 13

Interrogatories 12 and 13 are as follows:

Interrogatory No. 12:
Identify all companies by name, address, phone number
and contact person, that Veriscape is currently in
communication with for the sale, use or lease of Intellicat.

Response to Interrogatory No. 12:
Defendant objects to this interrogatory on the grounds that
the companies Veriscape is currently communicating with
regarding lease of Intellicat is not relevant to the time the
plaintiffs were employed by Veriscape.  Defendant also
objects on the grounds that the identities of such
companies are confidential business secrets.

Plaintiffs contend that plaintiff Whitney was hired because if his extensive customer

contacts in the e-commerce industry.  As a result, plaintiffs contend they may be entitled to

certain commissions on accounts which are currently pending at Veriscape.  After a meet and

confer between the parties, Plaintiffs later modified this interrogatory so that plaintiff

Whitney would provide defendant Veriscape with a list of customers and potential customers

that he had contacted while employed at the company.  In turn, defendant Veriscape had

agreed to identify, any of the customers on the list provided by plaintiff Whitney, by name,

address, telephone number and contact that the company was currently dealing with for the

sale, lease or use of the Intellicat software product.

Defendant Veriscape argues that plaintiff Whitney provided a list of customers and

potential customers that included 186 companies.  Defendant Veriscape argues that it is

difficult to fathom that the four plaintiffs were involved in discussions with that many

companies during their period of employment with the company.  Defendant Veriscape

points out that during their terms of employment, Plaintiffs demonstrated the Intellicat

United States District Court

For the Northern District of California

1    product to less than a dozen companies.  Oftentimes, a product demonstration is arranged

2    only when a customer or potential customer has significant interest in the product.  As such,

3    defendant Veriscape argues the list of customers and potential customers was not provided in

4    good faith and was merely an effort to circumvent the agreement reached by counsel during

5    their meet and confer.  Lastly, defendant Veriscape argues that in their amended complaint

6    Plaintiffs have not sought commissions from licensing agreements only commissions from

7    sales of the Intellicat software product.

8         As the parties had agreed to a modification of the interrogatory wherein plaintiff

9    Whitney later provided a list of 186 customers and potential customers to which defendant

10   Veriscape would respond, plaintiffs' motion to compel a further response to interrogatory no.

11   12 is granted.

12                    Interrogatory No. 13:
13                    State all sources of capital Veriscape had during 2002,
                      2003, and 2004.

14                    Response to Interrogatory No. 13:
15                    Interpreting the word "capital" as meaning capital
                      investment in the company, which is the usual business meaning
16                    of the term, there were no capital investments made in the
                      company during 2002, 2003 and 2004.

17

18        Plaintiffs argue that the parties had agreed that the term capital would encompass all

19   sources of money obtained by the company, including any investment money, cash loans or

20   gifts, income derived from the sale or lease of the Intellicat software product, asset sales,

21   reimbursements or refunds or money obtained from other sources.

22        Based on common usage of the term "capital," defendant Veriscape contends that it

23   did respond to the interrogatory.  Defendant Veriscape contends that later counsel did discuss

24   a newly expanded definition of "capital" to encompass all sources of money obtained by the

25   company.  However, counsel for defendant Veriscape also contends that it qualified any

26   agreement with Plaintiffs by stating that it required express approval from the company.  As

27   defendant Veriscape did not approve of the newly expanded definition, it objects to the

28   interrogatory.  Defendant Veriscape further objects to the disclosure of confidential business

**United States District Court**

For the Northern District of California

13

1  information.

2       As stated in the interrogatory, the court finds that the term "capital" is vague.

3  Therefore, Plaintiffs' motion to compel further response to interrogatory no. 13 is denied.

4       **B.    Plaintiffs' Motion for Sanctions**

5            **1.    Initial Disclosures**

6       As part of their motion to compel initial disclosures, Plaintiffs move for sanctions in

7  the amount of $1,680.[4]  Based on the amount of time spent conferring with opposing counsel,

8  drafting letters, conducting legal research, drafting motion papers and the time anticipated in

9  reviewing opposition papers, drafting a reply and attending the hearing, Plaintiffs' counsel

10 calculates seven hours of time at an hourly billing rate of $240 totaling $1,680 in attorneys'

11 fees.  Of this time plaintiffs' counsel estimates three hours to review defendants' opposition,

12 draft a reply and attend a motion hearing.  Alternatively, Plaintiffs seek evidence, issue

13 and/or terminating sanctions.

14      Plaintiffs' motion for sanctions is denied.  Additionally, Plaintiffs' motion for

15 evidence, issue and/or terminating sanctions is denied.

16           **2.    Document Requests**

17      Plaintiffs further move for sanctions in the amount of $1,440.  As part of their motion

18 to compel further production of documents, Plaintiffs seek an award based on the amount of

19 time counsel has spent conferring with opposing counsel, drafting letters, conducting legal

20 research, drafting motions and assembling relevant exhibits.  Plaintiffs' counsel calculates six

21 hours of time at an hourly billing rate of $240 totaling $1,440.  Alternatively, Plaintiffs seek

22 evidence, issue and/or terminating sanctions.

23      Plaintiffs' motion for sanctions is denied.  Plaintiffs' motion for evidence, issue and/or

24 terminating sanctions is also denied.

25           **3.    Interrogatories**

26      Plaintiffs move for sanctions in the amount of $1,560.  Based on the amount of time

27

28      [4]    This is generally not permitted under the Civil Local Rules, which require that a motion for sanctions under Fed. R. Civ. P. 37 be made separately from a motion to compel.  N.D. Civil Local Rules 37-2 and 7-8.

14

*United States District Court*

*For the Northern District of California*

**United States District Court**
For the Northern District of California

1 | spent meeting and conferring with counsel, drafting correspondence, conducting legal

2 | research, drafting motion papers and assembling exhibits, Plaintiffs seek sanctions as part of

3 | their motion to compel further interrogatory responses.  Plaintiffs calculate 6.5 hours of time

4 | at a $240 hourly billing rate.  Alternatively, Plaintiffs seek evidence, issue and/or terminating

5 | sanctions.  Here, the court finds that sanctions are unwarranted and Plaintiffs' motion is

6 | denied.  Plaintiffs' motion for evidence, issue and/or terminating sanctions is also denied.

7 | **CONCLUSION**

8 | For the foregoing reasons, Plaintiffs' motion to compel further production of

9 | documents is granted.  Defendant Veriscape shall serve a written response to Plaintiffs'

10 | document request within ten (10) days of the date of this order.  Defendant Veriscape shall

11 | produce non-privileged documents within ten (10) days of the date of this order.  The parties

12 | shall meet and confer on a proposed stipulated protective order and file with the court the

13 | proposed order no later than March 21, 2006.  Any documents subject to a proposed

14 | stipulated protective order shall be produced within ten (10) days of the court's approval of

15 | such an order.  Plaintiffs' motion to compel further interrogatory responses is granted in part

16 | and denied in part.  Plaintiffs' motion to compel initial disclosures is moot.  Plaintiffs'

17 | motions for sanctions are denied.

18 | IT IS SO ORDERED.

19 | Dated: *3/1/2006*

20 | PATRICIA V. TRUMBULL

21 | United States Magistrate Judge

22 |
23 |
24 |
25 |
26 |
27 |
28 |

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28