UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAN L. WHITNEY, JANET R. HADLEY, MARGARET A. KORNOW-BROWN, ERIC BRELLE,<br><br>        Plaintiffs,<br><br>v.<br><br>CHARLES WURTZ, VERISCAPE, INC., RENEE TADLOCK, REGINA RYGELIS, WILL ARNTZ, SAM JACOBS, GARY BERKOWITS, BRIAN ROE and DOES 1-20,<br><br>        Defendants. | Case No.: C 04-5232  PVT<br><br>**ORDER DENYING MOTION FOR ORDER RELEASING DOCUMENTS FROM PROTECTIVE ORDER AND SETTING HEARING DATE FOR DEFENDANTS ARNTZ AND JACOB'S MOTIONS FOR SUMMARY JUDGMENT** |

**I.   INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiffs Dan L. Whitney, Janet R. Hadley, Margaret A. Kornow-Brown and Eric Brelle (collectively, "Plaintiffs") allege breach of contract, termination, and deceit by lying about the financial health of the company against their former employer, Veriscape, Inc.[1] The Complaint also alleges that Defendants Charles Wurtz, Renee Tadlock, Regina Rygelis, Will Arntz, Sam Jacobs, Gary Berkowits, and Brian Roe are liable as the alter ego of Defendant Veriscape.

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

ORDER, *page 1*

1  On February 6, 2007, the parties appeared before Magistrate Judge Patricia V. Trumbull
2  for hearing on Plaintiffs' Motion to Release Documents from Protective Order. The documents
3  in question were produced under an "attorney eyes only" confidentiality designation. Plaintiff's
4  counsel now seeks to be able to disclose the documents in question to his clients. For the
5  following reasons, the Motion is Denied.

**II.   DISCUSSION**

**A.   Motion to Release Documents from Protective Order**

Plaintiffs' counsel, Mr. Beck, would like to show to his clients four categories of documents: 1) Financial Statements; 2) Customer Agreements 3) Sales by Customer; and 4) List of 186 Customers and Prospective Customers. The Stipulated Protective Order in effect in this case provides for "Highly Confidential - Attorneys' Eyes Only" to apply to

> extremely sensitive 'Confidential Information or Items' whose disclosure to another party or nonparty would create a substantial risk of serious injury that could not be avoided by less restrictive means.

Stipulated Protective order ¶ 2.4. Defendants oppose the motion, arguing that the Plaintiffs work for a direct competitor and, therefore, the risk of injury cannot be avoided by less restrictive means.

1.   <u>Financial Statements</u>

Plaintiffs' counsel wants to show his clients the EBITDAs - Earnings before interest, taxes, depreciation, and Amortization or "Earnings Statements", Balance Sheets, and Statements of Changes in Cash.

a.   Earnings Statements

Plaintiffs' Counsel argues that these documents are relevant to the defenses that the company had few commissionable sales and there was not sufficient income to pay Plaintiffs' salaries. The question, however, is not whether the documents are relevant to the defenses, but rather whether Plaintiffs need to see the documents personally. Plaintiffs' counsel argues that Plaintiffs would know if the Earnings Statements are accurate, specifically whether the expenses are accurate. Defendants respond that Plaintiffs are not accountants and were not responsible for making the payments in the statements. Therefore, Plaintiffs cannot verify the Earnings

1  Statements.  The Court is persuaded that any limited ability of Plaintiffs to verify the statements
2  does not warrant the risk of disclosure to a direct competitor.
3  Plaintiffs' counsel  also lists questions he would like to ask his clients about the
4  expenses, such as why expenses are so high and whether salary is counted as an expense.  As
5  Defendants argue, counsel can get that information from his clients without revealing
6  confidential information.  For example, he can ask his clients what expenses fit into 'engineering
7  expense" without revealing any confidential information.   In reply, Plaintiffs' counsel lists more
8  questions he would like to ask his clients.  Counsel seeks definitions of various types of revenue
9  and for which types of revenue Plaintiffs were entitled to commissions; to know whether
10 Whitney had input into how Sales and Marketing expense was spent or if he knows how the
11 money was spent; and whether it was 2002 when Veriscape claimed not to have money to pay
12 salaries.  Plaintiffs' counsel also wants to ask about his clients knowledge of the exact amount
13 of money Veriscape had in the bank in 2002 and of a specific short term loan.  As above,
14 however, counsel can ask these questions without revealing confidential information.

### b. Balance Sheets

16 Plaintiffs' Counsel argues that he wants to ask his clients about the substantial amount of
17 current assets shown at the end of each year on the balance sheets.  Plaintiffs' Counsel claims
18 that he does not want to spend money in depositions asking about this issue if his clients can
19 explain it.  First, counsel can ask his clients generally about why money available was not spent
20 on salaries.  Second, Plaintiffs are planning to depose Defendants and the court is not persuaded
21 that Plaintiffs will incur any undue expense in asking Defendants these questions at the
22 depositions.

### c. Statement of Changes in Cash

24 Plaintiffs' Counsel argues that he needs to show his clients the Statement of Changes in
25 Cash because they show a substantial amount of money raised by loans.  Counsel argues he
26 needs his clients to verify the accuracy of the statement and whether they know if the money
27 raised was earmarked for a particular purpose.  Again, Plaintiffs would not be able to verify the
28 accuracy of these statements any better, and indeed they would be worse than, a professional

forensic accountant. Plaintiffs' Counsel also argues that the Plaintiffs will testify that they were told the money raised from certain loans from Arntz would be used to pay their salaries. Thus, he argues, he needs to be able to ask if a particular loan was from Arntz. However, if counsel cannot ask this question to his clients without revealing confidential information, he can ask Defendants at their depositions.

### 2. Sales by Customer

Plaintiffs' Counsel wants to ask his clients if the amount of money provided as sales for the four customers named in the Complaint comport with their understandings. (First Amended Complaint ¶¶ 87, 90, 93, 96.) Counsel also wants to ask his clients if there were sales to anyone else. As for the former, he can ask them what they think sales were without revealing the confidential information. As for the latter, he can ask his clients to name the companies to whom sales were made. Counsel also argues that his clients need to know the amount of sales to Bank of Montreal so they can tell him whether to bother spending money on discovery. However, counsel knows the amount and should be capable of deciding on his own if that amount is worth pursuing. Thus, there is no reason to reveal this highly confidential information.

### 3. Customer Agreements

Plaintiffs' Counsel claims that the contracts are "super-technical and complex. This attorney cannot understand them." (Opp. At 4:18-19). Defendants argue that the contracts are not so complex as to warrant violating their legitimate need to keep this extremely confidential information from reaching its current, direct competitor. The Court has examined a sample contract and finds that it is not prohibitively technical or complex. Moreover, Defendant Regina Rygelis explained how to read the customer contracts to Plaintiffs' counsel. (Rygelis Decl. ¶ 8.) Ms. Rygelis also produced the general ledger from 2002-2004 and explained how to cross reference the entries in the ledger with the contracts to trace all income and determine where the money was spent. (Rygelis Decl. ¶ 9.) Accordingly, counsel should be able to now understand the contracts. If he cannot, he must hire expert help.

Counsel also claims his clients need to see the actual contracts to know whether they contend that they negotiated the contracts. As Defendants correctly point out, it is not logical

that Plaintiffs need to see the actual contracts to know whether they contend they negotiated them.

Finally, in Reply, Plaintiffs' counsel contends that he needs to show contracts to his clients to ask why there are contracts for two customers for whom there is no sales listed in the sales by customer. Counsel can get this information at Defendants' depositions. He can also ask his clients this question in a general way without revealing confidential information. Counsel also argues he wants to ask his clients why the amount in the Sales by Customer is so low compared to the value of the contract, as he understands it. Again, he can ask his clients how sales revenue is booked, using hypothetical examples instead of revealing confidential information. Alternatively, counsel could propound interrogatories to Defendants to obtain this information. The question under the protective order is whether there less restrictive means exist that protect the holder of the information. The question is not whether maintaining confidentiality will be slightly more expensive for the person seeking the information.

4.    186 Customer List

Plaintiffs provided Defendants with a list of 186 potential customers that they claim they contacted on behalf of Veriscape. The document at issue is a modified version of that list, with all of the contact information for the potential customers and who Veriscape claims made the initial contact. Plaintiffs claim they supplied the list, so it cannot be confidential. However, the document in question is not the original list, it is a new document with additional, confidential information. Defendants persuasively argue that Plaintiffs can figure out what customers and potential customers they worked on from non confidential weekly sales status reports. Thus, there is no need for Plaintiffs to see the confidential data.[2]

**B.    Hearing Date for Motions for Summary Judgment**

On October 6, 2006, Defendants' Arntz and Jacobs moved for summary judgment, claiming that there is no evidence that they are the alter egos of Veriscape and that alter ego is the sole basis for liability against them. The hearing was originally set for November 14, 2006.

---

[2] If Plaintiffs claim not to currently have these documents, Defendants shall produce them without requiring Plaintiffs to issue formal discovery requests.

On October 18, 2006, Plaintiff Dan Whitney ("Whitney") moved to continue the summary judgment hearing under Local Rule 6-3. On November 6, 2006, the court granted the motion to continue. At the hearing on February 6, 2007, the Court, after allowing Counsel for Mr. Arntz and Mr. Jacobs, Mr. Kravitz to appear by telephone, the Court specially set the hearing for the Arntz and Jacobs Motions for Summary Judgment for 10:00 a.m. on Wednesday, May 2, 2007.

**III.    CONCLUSION**

For the foregoing reasons, It Is Hereby Ordered that:

1. Plaintiffs' Motion to Release Documents from Protective Order is Denied; and
2. The Motions for Summary Judgment filed Mr. Arntz and Mr. Jacobs shall be heard on 10:00 a.m. on Wednesday, May 2, 2007

IT IS SO ORDERED

sDated: February   9,   2007

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge